**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo (*pro hac vice* admitted)
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone: (212) 223-6444
jguglielmo@scott-scott.com

*Attorneys for Plaintiff Casey Weitzman*

[Additional counsel appear
on signature page.]

**ISRAEL DAVID LLC**
Israel David (*pro hac vice* admitted*)*
Hayley Elizabeth Lowe (*pro hac* forthcoming*)*
Blake Hunter Yagman (*pro hac vice* admitted)
Madeline Sheffield (*pro hac* forthcoming)
17 State Street, Suite 4010
New York, NY 10004
Telephone: (212) 739-0622
israel.david@davidllc.com
hayley.lowe@davidllc.com
blake.yagman@davidllc.com
madeline.sheffield@davidllc.com

*Attorneys for Plaintiffs Stephen Gerber and*
*Eric Cohen*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### OAKLAND DIVISION

| | |
|---|---|
| STEPHEN GERBER, ERIC COHEN, and CASEY WEITZMAN, Individually and on Behalf of Themselves and All Others Similarly Situated,<br><br>Plaintiffs,<br><br>vs.<br><br>TWITTER, INC. and X CORP., as Successor in Interest to Twitter, Inc.,<br><br>Defendants. | Case No. 4:23-cv-00186-KAW<br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>JUDGE: Kandis A. Westmore<br>DATE: October 19, 2023<br>TIME:  1:30 PM<br>COURTROOM: TBD |

1

## <u>TABLE OF CONTENTS</u>

I.      STATEMENT OF THE ISSUES TO BE DECIDED..............................................1

II.     INTRODUCTION ..............................................................................................1

III.    FACTUAL BACKGROUND ..............................................................................1

        A.      The Twitter Platform and Services ..........................................................1

        B.      Plaintiffs Provide Twitter with Their PII and Enter into the User
                Agreement..............................................................................................2

        C.      Twitter's Data Security Failures and the Resulting Data Breach ............3

        D.      The Existing and Likely Future Harm Caused by the Data Breach.........5

IV.     STANDARD OF REVIEW ................................................................................5

V.      ARGUMENT .....................................................................................................6

        A.      Twitter's Disclaimer and Limitation of Liability Clauses Are
                Unenforceable ........................................................................................6

                1.      Twitter's Disclaimer Is Procedurally Unconscionable ..............6

                2.      Twitter's Disclaimer Is Substantively Unconscionable.............7

        B.      Plaintiffs Sufficiently Plead Breach of Contract....................................9

                1.      Twitter Breached Its Promise to Protect Plaintiffs' PII .............9

                2.      Plaintiffs Allege a Causal Link Between the Data Breach and
                        Damages..............................................................................10

                3.      Plaintiffs Sufficiently Pled Contract Damages .........................11

        C.      Plaintiffs Sufficiently Plead Unjust Enrichment...................................12

        D.      Plaintiffs Sufficiently Pleaded Claims for Negligence .........................12

                1.      The Economic Loss Rule Does Not Bar Plaintiffs' Negligence
                        Claims ..................................................................................12

                2.      Plaintiffs Have Sufficiently Pled that Twitter's Negligence Was a
                        Substantial Factor in Causing the Alleged Harm to Plaintiffs.................13

                3.      Plaintiffs Have Pled Negligence Damages ...............................14

        E.      The Complaint States a Claim for Violations of the UCL......................14

                1.      Economic Injury Is Adequately Pled ........................................14

                2.      Plaintiffs Plead Unlawful Business Practices ...........................15

                3.      Plaintiffs Adequately Plead Unfair Business Practices ............16

                4.      Plaintiffs Plead a Basis for Restitution ....................................18

        F.      The Complaint States a Claim for Violation of the CLRA......................18

                1.      CLRA Standing.......................................................................18

                2.      Plaintiffs and Twitter Entered into a "Transaction" .................19

i

3. Twitter Provides "Services" .......................................................................19

4. The CLRA Claim Is Pled with Particularity .............................................19

G. Plaintiffs Are Entitled to Injunctive Relief on Their UCL and CLRA Claims ..........................................................................................................................20

H. Plaintiffs Sufficiently Plead Their Declaratory Judgment Act Claim ..................20

VI. CONCLUSION ..............................................................................................................21

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Adkins v. Facebook, Inc.*,
    424 F. Supp. 3d 686 (N.D. Cal. 2019) ........................................................................20

5

6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)......................................................................................................5

7

*Bass v. Facebook, Inc.*,
    394 F. Supp. 3d 1024 (N.D. Cal. 2019) ......................................................................13

8

9

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007)......................................................................................................5

10

*Brown v. Google LLC*,
    No. 20-CV-03664-LHK, 2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ...........15, 18

11

12

*Calhoun v. Google LLC*,
    526 F. Supp. 3d 605 (N.D. Cal. 2021) ..................................................................14, 15

13

*Cappello v. Walmart, Inc.*,
    394 F. Supp. 3d 1015 (N.D. Cal. 2019) ........................................................14, 15, 17

14

15

*Darnaa, LLC v. Google LLC*,
    756 F. App'x 674 (9th Cir. 2018) ...............................................................................8

16

*DCD Programs, Ltd. v. Leighton*,
    833 F.2d 183 (9th Cir.1987) .......................................................................................21

17

18

*Doe 1 v. AOL LLC*,
    719 F. Supp. 2d 1102 (N.D. Cal. 2010) ......................................................................19

19

20

*DotStrategy Co. v. Twitter Inc.*,
    476 F. Supp. 3d 978 (N.D. Cal. 2020) ........................................................................17

21

*First Choice Fed. Credit Union v. Wendy's Co.*,
    No. 16-506, 2017 WL 9487086 (W.D. Pa. Feb. 13, 2017)........................................21

22

23

*Gardiner v. Walmart Inc.*,
    No. 20-cv-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) .......................8

24

25

*Hart v. TWC Prod. and Tech. LLC*,
    526 F. Supp. 3d 592 (N.D. Cal. 2021) ........................................................................21

26

*Hinojos v. Kohl's Corp.*,
    718 F.3d 1098 (9th Cir. 2013) ....................................................................................18

27

28

*I.C. v. Zynga, Inc.*,
   600 F. Supp. 3d 1034 (N.D. Cal. 2022) ...................................................................11

*In re Ambry Genetics Data Breach Litig.*,
   567 F. Supp. 3d 1130 (C.D. Cal. 2021) ............................................................13, 14

*In re Anthem, Inc. Data Breach Litig.*,
   No. 15-md-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016)...............11

*In re Arby's Rest. Grp. Inc. Litig.*,
   No. 1:17-cv-1035-AT, 2018 WL 2128441 (N.D. Ga. Mar. 5, 2018) .....................20

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
   402 F. Supp. 3d 767 (N.D. Cal. 2019) ...................................................6, 9, 10, 12

*In re Facebook Priv. Litig.*,
   192 F. Supp. 3d 1053 (N.D. Cal 2016) ..................................................................12

*In re Google Referrer Header Priv. Litig.*,
   465 F. Supp. 3d 999 (N.D. Cal. 2020) ...................................................................12

*In re Home Depot, Inc., Customer Data Sec. Breach Litig.*,
   No. 1:14-md-2583-TWT, 2016 WL 2897520 (N.D. Ga. May 18, 2016) ...............20

*In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*,
   613 F. Supp. 3d 1284 (S.D. Cal. 2020) ............................................................13, 14

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   313 F. Supp. 3d 1113 (N.D. Cal. 2018) ...................................................6, 7, 8, 19

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
   No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017) ..............20

*Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.*,
   315 F. App'x 603 (9th Cir. 2008) ..........................................................................13

*Kwikset Corp. v. Super. Ct.*,
   51 Cal. 4th 310 (Cal. 2011).............................................................................14, 15

*Leon v. Fam. Fitness Ctr. (No. 107), Inc.*,
   61 Cal. App. 4th 1227 (Cal. Ct. App. 1998) ...........................................................8

*Lewis v. YouTube, LLC*,
   244 Cal. App. 4th 118 (Cal. Ct. App. 2015) ............................................................8

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008) ..........................................................................6, 11

*McCoy v. Alphabet, Inc.*,
   No. 20-cv-05427-SVK, 2021 WL 405816 (N.D. Cal. Feb. 2, 2021)......................17

iv

*MedImmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007) ................................................................................................20

*Medoff v. Minka Lighting, LLC*,
   No. 2:22-cv-08885-SVW-PVC, 2023 WL 4291973 (C.D. Cal. May 8, 2023) ................11, 13

*Murphy v. Twitter, Inc.*,
   60 Cal. App. 5th 12 (Cal. Ct. App. 2021) ...............................................................8

*Newton v. Am. Debt Servs.*,
   75 F. Supp. 3d 1048 (N.D. Cal. 2014) ...................................................................16

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
   55 Cal. 4th 223 (Cal. 2012) ...................................................................................6

*Pokorny v. Quixtar, Inc.*,
   601 F.3d 987 (9th Cir. 2010) ..................................................................................6

*Robinson Helicopter Co. v. Dana Corp.*,
   34 Cal. 4th 979 (Cal. 2004) ...................................................................................12

*Rubenstein v. Neiman Marcus Grp. LLC*,
   687 F. App'x 564 (9th Cir. 2017) ..................................................................15, 16

*Sanchez v. Valencia Holding Co., LLC*,
   61 Cal. 4th 899 (Cal. 2015) ...................................................................................6

*Schmitt v. SN Servicing Corp.*,
   No. 21-cv-03355-WHO, 2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) ...................11

*Schmitt v. SN Servicing Corporation*
   No. 21-cv-03355-WHO, 2021 WL 5279822 (N.D. Cal. Nov. 12, 2021) ...............16

*Silicon Valley Self Direct, LLC v. Paychex, Inc.*,
   No. 5:15-cv-01055-EJD, 2015 WL 4452373 (N.D. Cal. July 20, 2015) ..................7

*Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*,
   708 F.3d 1109 (9th Cir. 2013) ..............................................................................21

*Sorensen v. Lexar Media, Inc.*,
   No. 5:08-cv-0095-EJD, 2012 WL 929849 (N.D. Cal. Mar. 19, 2012) ...................21

*Stasi v. Inmediata Health Grp. Corp.*,
   501 F. Supp. 3d 898 (S.D. Cal. 2020) ...................................................................13

*Svenson v. Google Inc.*,
   No. 13-cv-04080-BLF, 2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ...............11, 17

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ..................................................................................5

**Statutes, Rules, and Regulations**

California Business & Professions Code
§17204.................................................................................................................14
§22576.................................................................................................................15

California Civil Code
§1750..................................................................................................................18
§1760..................................................................................................................18
§1761(e)..............................................................................................................19
§1770..................................................................................................................18
§1770(a)(5)..........................................................................................................18
§1770(a)(9)..........................................................................................................18
§1770(a)(16)........................................................................................................18
§1780(a)..............................................................................................................18
§1798.81.5(b)......................................................................................................16
§17200................................................................................................................14

15 U.S.C.
§45(a)(1).............................................................................................................15

Federal Rules of Civil Procedure
Rule 8(a)(2).....................................................................................................5, 11
Rule 9(b).......................................................................................................17, 19
Rule 12(b)(6)....................................................................................................1, 5

1       Plaintiffs Stephen Gerber, Eric Cohen, and Casey Weitzman, individually and on behalf of

2   all others similarly situated ("Plaintiffs") respectfully submit this memorandum of law in

3   opposition (the "Opposition" or "Opp.") to Defendants Twitter, Inc.'s and X. Corp.'s, as successor

4   in interest to Twitter, Inc., ("Defendants" or "Twitter") Motion to Dismiss Plaintiffs' Consolidated

5   Amended Class Action Complaint (the "Complaint" or "CAC") (Dkt. No. 36) pursuant to Rule

6   12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P." or the "Rules") (the "Motion"

7   or "MTD") (Dkt. No. 40).

8   **I.     STATEMENT OF THE ISSUES TO BE DECIDED**

9       Whether the Complaint sufficiently states claims for relief (Counts I through VIII) such

10   that Defendants' Motion pursuant to Rule 12(b)(6) should be denied in its entirety.

11   **II.     INTRODUCTION**

12       Plaintiffs allege in the Complaint that they and members of the Class provided Twitter with

13   valuable personally identifiable information ("PII"), such as the names, email addresses, and phone

14   numbers.  Certain Plaintiffs and Class members did so with the intent and understanding that they

15   could use Twitter under pseudonyms.  Despite being entrusted with this information, and despite

16   being one of the largest technology/social media companies in the world, Twitter failed to comply

17   with its duties to secure sensitive data and fix known flaws in its data security regime.  Foreseeably,

18   Twitter was hit by a major hacking incident, in which the PII of Plaintiffs and the Class was

19   accessed without authorization and posted to the dark web.  Additionally, the Data Breach allowed

20   pseudonym user's actual identities to be disclosed.  As a result, Plaintiffs and the Class have been

21   damaged and are imminently at risk for identity theft.  Plaintiffs bring this class action suit against

22   Twitter, asserting statutory and common-law claims under California law.  As set forth below, the

23   Complaint sufficiently pleads each of these claims.

24   **III.     FACTUAL BACKGROUND**

25       **A.  The Twitter Platform and Services**

26       Twitter is a social media platform where users can post and engage with short-form

27   commentary, called "Tweets," which may include text, images, or video.  CAC, ¶¶2, 28-30.  Each

28   user must create a user name and display name, which are displayed publicly and associate the

user with their activity on the Twitter platform.  *Id.*, ¶32.  Twitter invites users to operate on its platform by using pseudonymous user and display names, thereby allowing users to share and access information and engage freely and anonymously.  *Id.*, ¶¶41-44.  While Twitter does not charge its users, it realizes billions of dollars in annual revenues from the highly valuable data generated by its users.  *Id.*, ¶31.

### B.  Plaintiffs Provide Twitter with Their PII and Enter into the User Agreement

The sign-up process to use the Twitter platform requires a prospective user to:  (1) enter into a User Agreement, and (2) provide certain personal information, including name, email address, phone number, and date of birth (collectively, PII).[1]  CAC, ¶¶32-36.  Prior to accessing the Twitter platform and using Twitter's services, Plaintiffs entered into the User Agreement with Twitter, including the Privacy Policy, and provided Twitter with their PII, as requested by Twitter and subject to Twitter's representations set forth in the Privacy Policy.  *Id.*, ¶¶97, 118-34.

The Privacy Policy states in detail how user data, including PII, will be used and who will have access to that data.  *Id.*, ¶¶37-39, 122-26.  Specifically, pursuant to the Privacy Policy, Twitter represented to and promised Plaintiffs (in each case, as further proscribed by additional terms and conditions) that:

  i.   Use of data is limited to specified purposes, including to: "Operate, improve, and personalize our service"; to "Foster safety and security"; to "Measure, analyze and make our services better"; to "Communicate with you about our services"; and for "Research."  *(id.*, ¶122);

  ii.  Access to or disclosure of data is limited to specified circumstances and third parties, including:  when such disclosure is "with your consent or at your discretion"; "with service providers" that help Twitter "operate our services"; as "necessary to comply with a law" or "protect the safety or integrity of our platform"; or as a result of "[c]hange in [o]wnership."  *(Id.*, ¶123); and

---

[1]    The User Agreement, as stated therein, includes the Terms of Service, the Privacy Policy, the Twitter Rules and Policies, and all incorporated policies.  *See* CAC, ¶¶33-35.  The terms "User Agreement," "Terms of Service," and "Privacy Policy" shall have the definitions ascribed to them in paragraph 35, including footnote 1 thereto, of the Complaint.  The Terms of Service are also referred to herein as the "TOS."

2

iii.     Access to, disclosure, or use of user email addresses and phone numbers is further limited to specified security and account service functions, such as ". . .to authenticate your account and keep it – and our services – secure, and to help prevent spam, fraud, and abuse[,]" to enable "account features" such as "login verification" and to send "information about" and "personalize our services." *Id.*, ¶124.

### C.  Twitter's Data Security Failures and the Resulting Data Breach

From around June 2021 through January 2022, a defect in Twitter's application programming interface ("API") allowed threat actors to access and obtain PII associated with an estimated 200 million Twitter users.  CAC, ¶¶6, 19, 23, 26, 39, 46, 60.  It is unclear from publicly available information whether the person(s) that took advantage of the API vulnerability were external threat actors or had internal access at Twitter.  *Id.*, ¶¶46, 75(b), 75(g), 80, 83, 93, 97.  The information extracted through the API defect consists of information associated with users' Twitter account (username, display name, and account creation data), together with the users' PII (email address and phone number).  *Id.*, ¶46.  This data was offered for sale, on more than one occasion, and/or leaked on the dark web between August 2022 and January 2023.  *Id.*[2]

Twitter claims to have only learned of the API defect from a third-party, not through its own diligence.  *Id.*, ¶¶61-64.  And, after learning of the defect, Twitter claims that it failed entirely to ascertain that a threat actor may have taken advantage of the defect to obtain access to user PII and that it only learned of the Data Breach from press reports that extensive data obtained in a Twitter hack was for sale on the dark web.  *Id.*  Twitter only provided a statement on the matter following these press reports.  *Id.*  Twitter has also, disingenuously, attempted to cast doubt as to whether later leaks in the Data Breach consisted of data obtained through the API defect – data which is qualitatively identical to the data that Twitter admits ***was*** obtained through the API defect and which could not reasonably be expected to otherwise exist in such a combination (Twitter account details with related user PII).  *Id.*, ¶¶67-69.  Twitter has taken no remedial action to recover

---

[2]     The series of occurrences described in this paragraph, including the API defect, the extraction of user information, and the leak and/or sale, of the data, is referred to as the "Data Breach."

1    the data or mitigate the damage to its impacted users.  *Id*., ¶71.

2         Critically, the Data Breach does not represent an isolated incident, but the foreseeable result

3    of the reckless way that Twitter has chosen to operate its business.  As early as 2010, Twitter came

4    under scrutiny from the Federal Trade Commission ("FTC") for its data privacy failures, resulting

5    in the entry of a 2011 consent order (the "FTC Order"), which Twitter has continued to violate

6    (despite being subject to it for over a decade), including with respect to the Data Breach.  *Id.*, ¶¶7,

7    83-90.

8         Recently, Twitter's former Head of Security, Peiter Zatko, filed a whistleblower complaint

9    and testified before Congress regarding the dangerous and pervasive lack of both internal and

10   external data security at Twitter.  *Id.*, ¶¶73-77.  Among other shocking details, Zatko explained

11   that Twitter's systems are only capable of securing approximately 20% of the data in its custody

12   and that Twitter is unable to internally search for or identify inappropriate access within its own

13   systems.  *Id.*, ¶75.  Zatko provided comprehensive reports to the Twitter Board of Directors and

14   executives concerning these matters.  *Id.*, ¶¶74-77.  Twitter, however, failed and refused to

15   implement even the most basic and cost-effective measures.  *Id.*  At the very same time, the events

16   giving rise to the Data Breach occurred.  *Id.*, ¶¶46, 73.

17        Given the substantial record that has emerged of repeated and extensive warnings and

18   alarm bells (both internal and external) to Twitter regarding the risks posed by its data security

19   infrastructure, it is clear that, prior to the Data Breach, Twitter knew and understood that the way

20   in which it operates its business poses numerous, serious, and imminent threats to consumer

21   privacy and data security.  Twitter's contemporaneous and ongoing failure to implement

22   reasonable data security measures in response makes it clear that Twitter knowingly made an

23   informed business decision to shift the risks of its anemic data security to consumers rather than

24   incur the costs to mitigate or eliminate these risks.  The Data Breach is the result of that decision.

25        Had Plaintiffs known that Twitter failed to implement reasonable and adequate data

26   security measures, they would not have created Twitter accounts or would not have provided their

27   PII that was disclosed in the Data Breach to Twitter.  *Id.*, ¶¶19, 23, 26.

28

1

### D.  The Existing and Likely Future Harm Caused by the Data Breach

2      The Data Breach has caused and will continue to cause damage to Plaintiffs and members

3   of the putative Class.  CAC, ¶¶98-104.  As evidenced by the multiple opportunities through the

4   dark web to purchase the PII at issue in this action, there is an active market for this data.  *Id*.,

5   ¶¶46, 52, 57, 60.  There are also legitimate uses and markets for consumer PII.  *Id*., ¶¶48, 50-57,

6   99, 102.  However, once PII is used or disclosed, it loses value.  *Id*.  The Data Breach has also

7   caused specific and unique harm to Twitter's impacted users that accepted its invitation to operate

8   on its platform anonymously through the used of pseudonyms, such as Plaintiffs Gerber and

9   Cohen, as the data available as a result enables any person with access to it to readily ascertain the

10  identity of the person associated with a pseudonymous Twitter account and their related activity

11  on the platform.  *Id*., ¶¶49, 65, 104.

12     Moreover, once PII is stolen, fraudulent use of that information and damage to victims

13  poses a continued threat for years because, once PII is exposed, there is virtually no way to ensure

14  that the information has been fully recovered or protected from future misuse.  *Id*., ¶¶53, 57.  As

15  such, Plaintiffs are at a substantially increased risk of suffering identity theft and fraud in the future.

16  *Id*., ¶¶100-102.

17  ## IV.    STANDARD OF REVIEW

18     Under Rule 8(a)(2), a complaint must contain a short and plain statement of the claim

19  showing that the pleader is entitled to relief.  Detailed factual allegations are not required, but the

20  Rule does call for sufficient factual matter, accepted as true, to state a claim for relief that is

21  plausible on its face.  A claim has facial plausibility when the pleaded factual content allows the

22  court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

23  *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).[3]  To survive a motion under Rule 12(b)(6), a complaint

24  need only allege "'[f]actual allegations . . . enough to raise a right to relief above the speculative

25  level.'"  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Bell Atl. Corp.*

26  v. *Twombly*, 550 U.S. 544 (2007)).  In considering a motion to dismiss, all factual allegations in

27  the complaint are to be accepted as true and all reasonable inferences are to be drawn in favor of

28

---

[3]      Citations are omitted and emphasis is added throughout unless otherwise noted.

PLAINTIFFS' MEM. OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS          CASE NO. 4:23-CV-00186-KAW

1    the plaintiff. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

2    **V.    ARGUMENT**

3    **A.  Twitter's Disclaimer and Limitation of Liability Clauses Are Unenforceable**

4        Twitter claims that disclaimer and limitation of liability clauses in the Terms of Service

5    immunize Twitter from any liability for its actions.  MTD at 6-8.  However, the contract terms

6    identified by Defendants do not bar Plaintiffs' claims because the terms are unconscionable as a

7    matter of law.[4]  Unconscionability requires the plaintiff to allege facts "showing that the term is

8    both procedurally and substantively unconscionable."  *In re Yahoo! Inc. Customer Data Sec.*

9    *Breach Litig.*, 313 F. Supp. 3d 1113, 1136 (N.D. Cal. 2018).   Substantive and procedural

10   unconscionability are comparatively assessed on a "sliding scale" – *e.g.*, "'the more substantively

11   oppressive the contract term, the less evidence of procedural unconscionability is required to come

12   to the conclusion that the term is unenforceable, and vice versa.'"  *Sanchez v. Valencia Holding*

13   *Co., LLC,* 61 Cal. 4th 899, 910 (Cal. 2015).  Plaintiffs have sufficiently alleged facts supporting

14   both substantive and procedural unconscionability of the contract terms at issue.

15               **1.  Twitter's Disclaimer Is Procedurally Unconscionable**

16       Procedural unconscionability focuses on two factors: oppression and surprise.  *Pinnacle*

17   *Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC.*, 55 Cal. 4th 223, 246 (Cal. 2012).

18   Oppression can be found where there is unequal bargaining power among the parties, resulting in

19   an absence of choice of terms and true negotiation.  *Yahoo!*, 313 F. Supp. 3d at 1136.  Surprise

20   examines the extent that the terms at issue are buried in lengthy forms drafted by the party wishing

21   to enforce the term.  *Id.*  "[A] contract is procedurally unconscionable under California law if it is

22   'a standardized contract, drafted by the party of superior bargaining strength, that relegates to the

23   subscribing party only the opportunity to adhere to the contract or reject it.'"  *Pokorny v. Quixtar,*

24   *Inc.*, 601 F.3d 987, 996 (9th Cir. 2010).  The User Agreement meets this definition.  Specifically,

25   the User Agreement is a standardized contract, Twitter users may not negotiate or change any of

26

27   ───────────────
     [4]        Irrespective of the unconscionability of the limitation of liability clauses, Defendants
28   cannot invoke these terms to avoid liability for Plaintiffs' gross negligence claim.  *In re Facebook,*
     *Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 800 (N.D. Cal. 2019) ("California
     law forbids limiting liability for gross negligence.").

1    its terms, and the limitation of liability terms are included in lengthy forms drafted by Twitter.

2    California courts have held that similar limitation of liability clauses meet the standard for

3    procedural unconscionability. *Yahoo!*, 313 F. Supp. 3d at 1136-37.

4                    **2.  Twitter's Disclaimer Is Substantively Unconscionable**

5           A contractual limitation of liability term is substantively unconscionable where, as here,

6    the term is "overly one-sided and bar[s] any effective relief." *Id.*  In the TOS, Twitter purports to

7    effectively disclaim ***any*** duty to "secure [Plaintiffs'/users'] personal information" based on a broad

8    provision stating that its services are provided on an "AS IS" basis and that Twitter makes no

9    "warranty or representation and disclaim[s] all responsibility and liability for" broad categories of

10   harm encompassing virtually any harm that could arise from use of its services.  MTD at 7; TOS,

11   §5.  The TOS also purports to release Twitter from liability for "INDIRECT, INCIDENTAL,

12   SPECIAL, CONSEQUENTIAL OR PUNITIVE DAMAGES, OR ANY LOSS OF PROFITS OR

13   REVENUES, WHETHER INCURRED DIRECTLY OR INDIRECTLY, OR ANY LOSS OF

14   DATA, OR OTHER INTANGIBLE LOSSES" – *e.g.*, virtually any category of damages.  MTD

15   at 7-8 (citing TOS, §5).  Such "expansive liability limitation and preclusion of nearly every type

16   of damages claim is obviously overly-harsh and one-sided, and has no other purpose than to

17   maximize [defendant]'s advantage" – and is therefore substantively unconscionable. *Silicon*

18   *Valley Self Direct, LLC v. Paychex, Inc.*, No. 5:15-cv-01055-EJD, 2015 WL 4452373, at *6 (N.D.

19   Cal. July 20, 2015); *accord Yahoo!*, 313 F. Supp. 3d at 1137.

20          Moreover, the terms are also substantively unconscionable because there is no reasonable

21   commercial justification for such draconian limitations on Plaintiffs' ability to pursue any claim.

22   Defendants are already obligated by law to maintain reasonable data security systems.  CAC,

23   ¶¶180-83.  In addition, Twitter, a large technology company, provided the services at issue  – on

24   the premise that user data would be safe – and is in a far superior position than its users to address

25   and manage the risk of data security matters.  These factors render the limitation of liability clause

26   relied upon by Twitter a "'commercially unfair re-allocation of risk,'" and, accordingly,

27   substantively unconscionable. *Yahoo!*, 313 F. Supp. 3d at 1138.  Even where, as here, a defendant

28   offers a free service and would otherwise be allowed discretion over those services to minimize its

                                                      7

1  exposure, a limitation of liability clause can be substantively unconscionable where the defendant

2  "took minimal action despite knowing about their inadequate security measures." *Id.*  The greater

3  harm of the exposure of Twitter users' valuable PII via the Data Breach separates the instant case

4  from Twitter's cited cases.  MTD at 7-8.  *See Lewis v. YouTube, LLC*, 244 Cal. App. 4th 118 (Cal.

5  Ct. App. 2015) (suspension of user account); *Murphy v. Twitter, Inc.*, 60 Cal. App. 5th 12, 35 (Cal.

6  Ct. App. 2021) (same); *Darnaa, LLC v. Google LLC*, 756 F. App'x 674 (9th Cir. 2018) (removal

7  of user content).

8       ***Finally***, despite Twitter's claim that its TOS is "clear, unambiguous and explicit" (MTD

9  at 7), a reading of the TOS as a whole shows that it would be unclear to a lay user whether the

10  limitation of liability terms would even apply to a data breach or whether the TOS limitation of

11  liability clauses specifically alter or abrogate the detailed terms governing disclosure and use of

12  user data, as set forth in the Privacy Policy.  Indeed, the TOS only explicitly addresses account

13  security once and briefly (TOS, §4), suggesting that all users need to do to keep their Twitter

14  accounts secure is to "use a strong password and limit its use to this account."  Nowhere in TOS,

15  §4 or elsewhere in the TOS does Twitter mention its own obligations to protect user data, including

16  with respect to data breaches.  The far more specific limitation of liability clauses at issue in the

17  cases cited by Defendants (MTD at 7-8) are specifically distinguishable in this regard.  For

18  example, in *Murphy*, 60 Cal. App. 5th at 35, a case involving a suspended account, the release

19  explicitly stated that Twitter reserved the right to "'suspend or terminate [users'] accounts . . . for

20  any or no reason'" without liability.  Similarly, in *Gardiner v. Walmart Inc.*, No. 20-cv-04618-

21  JSW, 2021 WL 2520103, at *9 (N.D. Cal. Mar. 5, 2021), a data breach case, the release clearly

22  states that users' information "'may not be secure ***and may be intercepted or otherwise accessed***

23  ***by unauthorized parties***.'"  Here, the non-specific "security" and "third party" clauses in Section

24  5 of the TOS are sandwiched between the specific language Twitter used to describe account

25  security in Section 4, and the specific language describing unauthorized access to users' content

26  in Section 5.  *See Leon v. Fam. Fitness Ctr. (No. 107), Inc.*, 61 Cal. App. 4th 1227, 1235 (Cal. Ct.

27  App. 1998) (finding substantive unconscionability where more generic release language was

28  sandwiched between more specific language).  The TOS as a whole, accordingly, does not clearly

1   inform or alert an ordinary person that they are releasing Twitter from any wrongdoing that may

2   arise from a data breach, such as the claims alleged in the Complaint, as required for enforceability.

### B.  Plaintiffs Sufficiently Plead Breach of Contract

"The elements for breach of contract under California law are: (i) the existence of a contract; (ii) the plaintiff's performance . . . of the agreement; (iii) the defendant's breach; and (iv) resulting damage to the plaintiff." *Facebook*, 402 F. Supp. 3d at 801.  Plaintiffs have more than adequately pled these elements by alleging: (i) the existence of the User Agreement, including the specific provisions breached by Defendants (CAC, ¶¶119, 122-26); (ii) Plaintiffs' performance of the User Agreement (*id*., ¶121); (iii) Defendants' breaches arising from the Data Breach (*id*., ¶¶127-30); and (iv) the damages caused by Defendants' breaches.  *Id*., ¶¶131.

### 1.  Twitter Breached Its Promise to Protect Plaintiffs' PII

Defendants argue that Plaintiffs have not pled the contractual provisions at issue and related breaches with sufficient specificity.  MTD at 9-10.  To the contrary, the Complaint identifies, in detail, the specific provisions that form the basis of Plaintiffs' contract claim, which fall into four general categories:  (i) use of data, (ii) sharing of data, (iii) further restrictions specifically applicable to use of email addresses and phone numbers, and (iv) the right to otherwise effectively manage data security by way of account privacy settings.  CAC, ¶¶122-26.  In each case, the specific contractual terms within these categories are identified and pled.  *Id*.  The Complaint also contains detailed factual allegations supporting that these operative provisions were breached by Defendants.  CAC, ¶¶45-46.  More specifically:

i.      The Complaint states that "Twitter agreed to limit use of Plaintiffs' and Class Members' data, to the purposes specified by the Privacy Policy, as further limited by the terms and conditions of each such category" of permissible use.  *Id*., ¶122. Plaintiffs further allege that the uses of their data resulting from the Data Breach violated these contractual limitations on use of data.  *Id*., ¶¶45-46, 128.

ii.     The Complaint further alleges that "Twitter also agreed to limit any sharing of Plaintiffs' and Class Members' data, to the categories specified by the Privacy Policy, as further limited by the terms and conditions of each such category."  *Id*.,

9

¶123.  The Complaint also sufficiently alleges the API vulnerability giving rise to the Data Breach and that the Data Breach resulted in the sharing of their data with third-parties which is outside the specifically permitted categories allowed by these provisions.  *Id.*, ¶¶45-46, 128.

iii. In addition, the Complaint pleads that "Twitter also promised Plaintiffs and Class Members that their email addresses and phone numbers, specifically, would only be used for certain purposes."  *Id.*, ¶124.  The Complaint clearly pleads that, as a result of the Data Breach, Plaintiffs' email addresses and phone numbers were used and disclosed for purposes outside of the purposes allowed by these provisions.  *Id.*, ¶¶45-46, 128.

iv. Finally, the Complaint pleads that "Twitter further promised Plaintiffs and Class Members that they could otherwise control access to their data security through their personalized privacy and account settings."  *Id.*, ¶125.  The Complaint, in turn, pleads that the disclosure and use of Plaintiffs' data in connection with the Data Breach does not conform with any permissions granted by Plaintiffs and is otherwise inconsistent with Plaintiffs' contractual right to otherwise control access to their data security in relation to their Twitter accounts.  *Id.*, ¶¶45-46, 128.[5]

These allegations are more than adequate at the pleading stage.  *See Facebook*, 402 F. Supp. 3d at 801.

**2. Plaintiffs Allege a Causal Link Between the Data Breach and Damages**

Contrary to Defendants' assertion (MTD at 10), the Complaint also sufficiently alleges a causal connection between Twitter's breaches of the Privacy Policy arising from the Data Breach and the damages alleged by Plaintiffs.  As explained in the Complaint (CAC, ¶128):  "The Data Breach caused by Twitter disclosed PII provided to Twitter by Plaintiffs and Class Members.  The use and disclosure of Plaintiffs' and Class Members' PII resulting from the Data Breach violated the User Agreements, because the resulting disclosure on the dark web and related uses or potential

---

[5] Plaintiffs' contract claim is not based on any "implied" duty as suggested by Twitter.  MTD at 10.  Rather, the claim is based on the specific terms of the User Agreement cited in the Complaint and referenced herein.

1  uses are not within any of the use or disclosure categories permitted by the User Agreement and

2  were not otherwise authorized or consented to by Plaintiffs or Class Members by such users'

3  privacy settings or otherwise." The Complaint also contains extensive allegations concerning how

4  the use and disclosure of Plaintiffs' data in violation of the User Agreements has damaged

5  Plaintiffs. *Id.*, ¶¶48-57, 91-104, 128-31. These allegations are more than sufficient under Rule

6  8(a)(2). Further, Defendants' attempt to challenge the sufficiency of the causal connection pled in

7  the Complaint by introducing factual disputes regarding, for example, the extent to which the "API

8  bug" caused the Data Breach and Plaintiffs' resulting damages (MTD at 11) are inappropriate at

9  this stage in the litigation. *Manzarek*, 519 F.3d at 1031.

10  ### 3.   Plaintiffs Sufficiently Pled Contract Damages

11  Twitter also contends that Plaintiffs have failed to sufficiently allege the damages element

12  of their contract claim, arguing that "none of the alleged harms rises to the level of 'appreciable

13  and actual damage' required for a breach of contract claim." MTD at 11. Plaintiffs, however,

14  specifically pled thirteen distinct categories of damages flowing from Twitter's breaches of

15  contract. CAC, ¶131. Courts have held that similar categories of damages are available on a claim

16  for breach of contract and satisfy the injury in fact requirement to state such a claim. *See Medoff*

17  *v. Minka Lighting, LLC*, No. 2:22-cv-08885-SVW-PVC, 2023 WL 4291973, at *4-*6 (C.D. Cal.

18  May 8, 2023) ("[H]arms that result as a consequence of a plaintiff's knowledge of a substantial

19  risk of identity theft, including time and money spent responding to a data breach or emotion

20  distress can satisfy concreteness."); *I.C. v. Zynga, Inc.*, 600 F. Supp. 3d 1034, 1052 (N.D. Cal.

21  2022); *Schmitt v. SN Servicing Corp.*, No. 21-cv-03355-WHO, 2021 WL 3493754, at *2, *9 (N.D.

22  Cal. Aug. 9, 2021). In particular, despite Defendants' claim otherwise (MTD at 12-13), diminution

23  in value of PII is a viable theory of damages under California state contract law. *Svenson v. Google*

24  *Inc.*, No. 13-cv-04080-BLF, 2015 WL 1503429, at *5 (N.D. Cal. Apr. 1, 2015). A plaintiff need

25  only allege the existence of a market for PII or an impairment of their ability to participate in it.

26  *In re Anthem, Inc. Data Breach Litig.*, No. 15-md-02617-LHK, 2016 WL 3029783, at *15 (N.D.

27  Cal. May 27, 2016). The Complaint describes that the PII taken in the Data Breach is available

28  for sale on the dark web, and that there is a marketplace for that specific PII. CAC, ¶¶52, 60.

1    Plaintiffs have thus pled injury in fact sufficient to maintain a contract claim.[6]

2        **C.  Plaintiffs Sufficiently Plead Unjust Enrichment**

3        Defendants argue that Plaintiffs "fail to plausibly allege that Twitter was unjustly

4    enriched."  MTD at 14.  Plaintiffs, however, plainly allege that Twitter has realized gains from its

5    misconduct at issue, including in the form of excess profits and cost savings realized as a result of

6    its failure to implement reasonable data security systems.  CAC, ¶¶159-65.  Moreover, given the

7    harm caused to Plaintiffs by Defendants' misconduct, it would be unjust for Defendants to retain

8    the benefits derived from this misconduct.  These allegations are sufficient to plausibly allege that

9    Defendants have been unjustly enriched by the misconduct alleged in the Complaint.  *Facebook*,

10   402 F. Supp. 3d at 803; *Google Referrer*, 465 F. Supp. 3d at 1012.[7]

11       **D.  Plaintiffs Sufficiently Pleaded Claims for Negligence[8]**

12           **1.  The Economic Loss Rule Does Not Bar Plaintiffs' Negligence Claims**

13       Twitter incorrectly argues that Plaintiffs' negligence claims are barred by the economic

14   loss rule due to the contractual relationship between the parties.  The economic loss rule "requires

15   a [plaintiff] to recover in contract for purely economic loss due to disappointed expectations, unless

16   [they] can demonstrate harm above and beyond a broken contractual promise."  *Robinson*

17   *Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 988 (Cal. 2004).  To avoid the application of the

18

19   ───────────────────

20   [6]     Indeed, while Plaintiffs have adequately pled actual damages, under California law "'a breach of contract claim accrues at the moment of breach' and 'the injury, for standing purposes, is the breach itself.'"  *In re Google Referrer Header Priv. Litig.*, 465 F. Supp. 3d 999, 1011 (N.D. Cal. 2020).  A plaintiff may accordingly maintain a breach of contract claim even for nominal damages.  *Id.*; *see also Facebook*, 402 F. Supp. 3d at 801; *In re Facebook Priv. Litig.*, 192 F. Supp. 3d 1053, 1060-62 (N.D. Cal 2016).

21

22

23   [7]     Contrary to Twitter's contention (MTD at 14), Plaintiffs "are permitted to plead claims for breach of contract and unjust enrichment in the alternative."  *Facebook*, 402 F. Supp. 3d at 803.

24

25   [8]     Defendants challenge Plaintiffs' negligence claims solely on the basis of the economic loss doctrine.  Defendants, accordingly, does not appear to dispute that, as a matter of law, it owed a duty to Plaintiffs to exercise reasonable care in respect of safeguarding Plaintiffs' PII, or that it breached this duty.  CAC, ¶¶136-38.  Moreover, Plaintiffs' extensive allegations concerning Defendants' knowledge of data security failures constituting an extreme departure from the ordinary standard of care and related violations of law more than plausibly allege gross negligence and negligence per se (which, again, Defendants do not appear to dispute).  CAC, ¶¶72-90, 145-50, 154.  *See Facebook*, 402 F. Supp. 3d at 799-800.

26

27

28

economic loss rule, a plaintiff must demonstrate that its tort claim falls within an exception: "(1) personal injury, (2) physical damage to property, (3) a 'special relationship' existing between the parties, or (4) some other common law exception to the rule."  *Kalitta Air, L.L.C. v. Cent. Texas Airborne Sys., Inc.***,** 315 F. App'x 603, 605 (9th Cir. 2008).

It is well-established in California that tort claims based on privacy injuries (and particularly in the context of data breach cases), such as Plaintiffs' negligence claims here, come within the "personal injury" exception to the economic loss rule.  *See e.g.*, CAC, ¶¶48-60, 99-104, 141.  *See Medoff*, 2023 WL 4291973, at *8 ("The Court agrees with Plaintiff on his first argument that his alleged privacy injury constitutes a personal injury."); *In re Ambry Genetics Data Breach Litig.***,** 567 F. Supp. 3d 1130, 1142 (C.D. Cal. 2021) ("Plaintiffs have not alleged merely economic injury.  Rather, they have alleged a privacy injury stemming from the unauthorized sharing of their private medical information."); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, 613 F. Supp. 3d 1284, 1295 (S.D. Cal. 2020) ("Here, Plaintiffs have alleged they have lost time responding to the Breach as well as suffering from increased anxiety and so do not allege purely economic losses."); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020) ("[T]ime spent responding to a data breach is a non-economic injury, that when alleged to support a negligence claim, defeats an economic loss doctrine argument."); *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1039 (N.D. Cal. 2019).  Based on the foregoing, Plaintiffs' negligence claims sufficiently allege non-economic injury as a result of the Data Breach – namely, a privacy injury stemming from the unauthorized disclosure of their PII – to avoid application of the economic loss rule.

### 2. Plaintiffs Have Sufficiently Pled that Twitter's Negligence Was a Substantial Factor in Causing the Alleged Harm to Plaintiffs

Twitter also argues that Plaintiffs' negligence claims fail, because Plaintiffs "fail to adequately plead the required causation for their negligence claims."  MTD at 16.  "'To demonstrate actual or legal causation [to state a negligence claim], the plaintiff must show that the defendant's act or omission was a substantial factor in bringing about the injury.'"  *In re Ambry*, 567 F. Supp. 3d at 1140-41.  Plaintiffs have more than plausibly alleged that Twitter's failure to

1    implement reasonable data security systems was a substantial factor in causing the Data Breach

2    and that the Data Breach was a (more than) substantial factor in causing the injuries alleged in the

3    Complaint. CAC, ¶¶72-90, 138-40. These allegations meet and exceed what is required to sustain

4    a negligence claim at the pleading stage. *In re Ambry*, 567 F. Supp. 3d at 1140.

5                    **3.  Plaintiffs Have Pled Negligence Damages**

6          Twitter claims that Plaintiffs' negligence claim also fails to sufficiently allege

7    "appreciable, nonspeculative, present harm." MTD at 16. Plaintiffs have alleged numerous

8    categories of harm arising from Defendants' negligence including diminution in value of their PII

9    and increased time spent to monitor credit. CAC, ¶¶99-102, 141. Courts have consistently held

10   that damages allegations substantially analogous to Plaintiffs' are sufficient to meet the element

11   of harm required to state a negligence claim. *See, e.g.*, *In re Solara*, 613 F. Supp. 3d at 1296

12   ("Increased time spent monitoring one's credit and other tasks associated with responding to a data

13   breach have been found by . . . courts to be specific, concrete, and non-speculative.").

14          **E.  The Complaint States a Claim for Violations of the UCL**

15          The California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq*. ("UCL")

16   prohibits "unfair competition," defined as "unlawful, unfair or fraudulent business practices." *See*

17   CAC, ¶¶168-85.

18                    **1.  Economic Injury Is Adequately Pled**

19          Standing to assert a UCL claim requires economic injury. *Kwikset Corp. v. Super. Ct.*, 51

20   Cal. 4th 310, 322-24 (Cal. 2011); Cal. Bus. & Prof. Code §17204. "[T]here are 'innumerable

21   ways' to demonstrate economic injury from unfair competition." *Cappello v. Walmart, Inc.*, 394

22   F. Supp. 3d 1015, 1019 (N.D. Cal. 2019) (quoting *Kwikset*, 51 Cal. 4th at 323). Contrary to

23   Twitter's contention (MTD at 17), the Complaint plausibly alleges two separate categories of

24   economic injury sufficient for UCL standing.

25          First, Plaintiffs have pled economic injury by alleging the "loss of the independent

26   monetary value of their PII." CAC, ¶185. The Complaint alleges how and when Plaintiffs' PII

27   was offered for sale and the monetary value and market for PII. *Id*., ¶¶46, 48, 50-52, 56-57, 59-

28   60, 102, 185. Courts have held that economic injury for UCL standing is adequately pled based

14

on diminution in value or loss of PII.  *See Calhoun v. Google LLC*, 526 F. Supp. 3d 605, 636 (N.D. Cal. 2021) (plaintiffs who suffered a loss of their PII suffered economic injury and had standing); *Brown v. Google LLC*, No. 20-CV-03664-LHK, 2021 WL 6064009, at *15 (N.D. Cal. Dec. 22, 2021) (UCL standing pled where plaintiff alleged that the future value of their data was diminished by unauthorized sale of the data).

Second, Plaintiffs have adequately alleged economic injury based on a "benefit of the bargain theory."  *See Cappello*, 394 F. Supp. 3d at 1019-20; *Kwikset*, 51 Cal. 4th at 323.  Where a UCL claim is based on breach of a privacy policy in violation of Cal. Bus. & Prof. Code §22576 ("Section 22576"), economic injury is demonstrated by the loss of the benefit of the bargain inherent in the breach itself.  Because Plaintiffs have adequately pled a breach of the Privacy Policy (*see supra*, §V.B.1-3) and violation of Section 22576 (*see infra*, §V.E.1-4), UCL standing is also established based on the benefit of the bargain approach.

Defendants claim that Plaintiffs have failed to plead standing because Plaintiffs did not pay for use of Twitter, "so they cannot claim to have lost money," and PII "does not constitute 'property.'"  MTD at 20.  Money paid is just one method to show economic injury, however, and courts in this District have recognized loss of PII as economic injury.  *See, e.g.*, *Calhoun*, 526 F. Supp. 3d at 636; *Brown*, 2021 WL 6064009, at *15.  The Court should do the same here.

### 2.  Plaintiffs Plead Unlawful Business Practices

"'[V]irtually any state, federal or local law can serve as the predicate for an action under the UCL.'"  *Rubenstein v. Neiman Marcus Grp. LLC*, 687 F. App'x 564, 567 (9th Cir. 2017).  The Complaint pleads that Defendants engaged in the following unlawful business practices:

*First*, Cal. Bus. & Prof. Code §22576 prohibits "an operator of a commercial website" that collects PII from consumers from violating "its posted privacy policy."  Plaintiffs have adequately pled breaches of the Privacy Policy (*supra*, §V.B.), which constitute a violation of Section 22576 sufficient to satisfy the unlawful prong for an UCL claim.  *See, e.g.*, *Cappello*, 394 F. Supp. 3d at 1022-23.

*Second*, the Complaint alleges that Defendants violated the Federal Trade Commission Act, 15 U.S.C. §45(a)(1), (the "FTC Act"), FTC cybersecurity guidelines, and the FTC Order.

1    CAC, ¶¶83-90.  Twitter argues that these violations cannot serve as a predicate for an UCL claim.

2    The Ninth Circuit held otherwise in *Rubinstein*, stating that "although the FTC Guides do not

3    provide a private civil right of action," they can serve as a predicate for an UCL claim.  687 Fed.

4    App'x at 567.  In fact, contrary to Defendants' description of *Schmitt v. SN Servicing Corporation*

5    (MTD at 17), the court in *Schmitt* relied on *Rubinstein* to conclude the plaintiff "may predicate her

6    UCL unlawful claim on the FTC Act and FTC guidelines."  No. 21-cv-03355-WHO, 2021 WL

7    5279822, at *5 (N.D. Cal. Nov. 12, 2021).[9]

8        Defendants' assertion that the Complaint fails "to allege **what** Twitter conduct in relation

9    to the API bug violated **what** part of the [FTC] [O]rder" is also unavailing.  MTD at 17.  Plaintiffs

10   specifically allege that the FTC Order "prohibits Twitter from misrepresenting 'the extent to which

11   [Twitter] maintains and protects the security, privacy, confidentiality, or integrity of any nonpublic

12   consumer information" and that "Twitter has continued to misrepresent the security and privacy

13   of its users' data in violation of the [FTC] Order and . . . the FTC Act."  CAC, ¶¶88-89.

14       ***Third***, the California Consumer Records Act ("CRA") requires that a business that

15   "maintains personal information about a California resident shall implement and maintain

16   reasonable security procedures and practices . . . to protect the personal information from

17   unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code §1798.81.5(b).

18   Plaintiffs have pled a CRA violation by alleging that Defendants maintains PII, but has not

19   implemented reasonable measures to protect this information.  CAC, ¶¶17, 21, 25, 32, 36, 45-46,

20   48, 72-82, 97.  Defendants contend that a violation is not pled because the CRA only applies to

21   "certain sensitive 'personal information,' which does not include . . . data Plaintiffs allege the API

22   bug exposed."  MTD at 18.  To state a violation of the CRA, the statute does not require that

23   "personal information" is compromised, only a failure to adequately protect that information.

### 3.  Plaintiffs Adequately Plead Unfair Business Practices

24

25       "The 'unfair' prong of the UCL creates a cause of action for a business practice that is

26

---

27   [9]    Defendants' reliance on cases addressing FDIC predicate claims is misplaced.  MTD at 17
     (citing *Newton v. Am. Debt Servs.*, 75 F. Supp. 3d 1048, 1058 (N.D. Cal. 2014)).  *Newton* is

28   distinguishable – the court's decision turned on a provision that "'no court shall have jurisdiction'"
     over orders issued pursuant to the operative FDIC regulation.  The FTC Act has no analogous
     jurisdictional provision.

unfair even if not proscribed by some other law." *Cappello*, 394 F.Supp.3d at 1023.[10]  To start, Defendants' contention that the entirety of "Plaintiffs' claims under the UCL's 'unfair' prong . . . must meet the heightened pleading standard of Rule 9(b)" (MTD at 18) is incorrect.  Rule 9(b) only applies to UCL claims based on misrepresentations and omissions.  *See Svenson*, 2015 WL 1503429, at *9.  Defendants' unfair business practice of "unreasonably failing to adopt data security measures adequate to protect Plaintiffs' and Class Members' PII and prevent the Data Breach" is not subject to Rule 9(b) and is adequately pled.  CAC, ¶172.

With respect to the unfair practices alleged by Plaintiffs that *are* based on Defendants' misrepresentations and omissions concerning the adequacy of its data security systems (*id.*, ¶¶178-79), the allegations are pled with requisite particularity.  It is sufficient under Rule 9(b) to plead the specific provision of the privacy policy, terms of service, or other statement constituting the misrepresentation or omission, and that the plaintiff relied on the same.  *See, e.g.*, *McCoy v. Alphabet, Inc.*, No. 20-cv-05427-SVK, 2021 WL 405816, at *10 (N.D. Cal. Feb. 2, 2021).  Here, the Complaint contains specific and detailed allegations regarding the provisions of the Privacy Policy and statements by Defendants that misrepresent and omit material information concerning Twitter's data security systems and the Data Breach (CAC, ¶¶38-39); Plaintiffs' reliance (*id.*, ¶¶40, 45, 91); and that, had Plaintiffs been aware of the data security inadequacies, that they would not have used Twitter at all, or would not have provided Twitter with certain information.  *Id.*, ¶¶19, 23, 26.  These allegations exceed the applicable particularity standards.[11]

---

[10]    Whether an alleged business practice is "unfair" is evaluated under two tests:  (i) the balancing test "requires courts to 'weigh the utility of the defendant's conduct against the gravity of the harm'" – "'an unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'"; (ii) for the "tethering test," "'the unfairness must be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.'"  *Cappello*, 394 F. Supp. 3d at 1023-24.  The practices alleged are "unfair" under either test.  CAC, ¶¶175-79.

[11]    The disclaimers cited by Defendants (MTD at 19) do not make Plaintiffs' reliance unreasonable, as they "are not irreconcilable with" Plaintiffs' understanding that Twitter would take reasonable data security measures consistent with the specific use and disclosure terms of the Privacy Policy.  CAC, ¶¶122-25.  *DotStrategy Co. v. Twitter Inc.*, 476 F. Supp. 3d 978, 985 (N.D. Cal. 2020).

17

4.  **Plaintiffs Plead a Basis for Restitution**

Plaintiffs have adequately pled at least one cognizable theory of restitutionary damages based on the diminution in value of their PII, this is all that is required at this stage. *See, e.g.*, *Brown*, 2021 WL 6064009, at *18 (where plaintiffs alleged diminution in value of their PII as UCL injury, plaintiffs could be entitled to restitution if able to "quantify this diminution in value"). Twitter is thus incorrect that the only measure of available restitution "is for money they paid to Twitter."  MTD at 21.

F.  **The Complaint States a Claim for Violation of the CLRA**

Plaintiffs' Complaint states a claim for violation of the California Consumers Legal Remedies Act, Cal. Civ. Code §1750, *et seq.* ("CLRA"), which prohibits enumerated categories of "unfair methods of competition and unfair or deceptive acts . . . in a transaction intended to result or that results in the sale or lease of goods or services to any consumer." *Id.*, §1770.[12]  CLRA is to "be liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." *Id.*, §1760.

1.  **CLRA Standing**

Defendants assert, without explanation, that "to plead a CLRA claim, Plaintiffs must allege that they suffered 'economic injury.'"  MTD at 20.  This is a misstatement of the law.  CLRA standing only requires "***any*** damage," not economic injury (as under the UCL), and is more than adequately established by the Complaint. CAC, ¶192;  Cal. Civ. Code §1780(a). *See, e.g.*, *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1108 (9th Cir. 2013).[13]

---

[12]     As relevant, the categories of proscribed conduct include: "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have"; "[a]dvertising goods or services with intent not to sell them as advertised"; or "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not."  Cal. Civ. Code §§1770(a)(5),(9),(16).

[13]     In any event, Plaintiffs have demonstrated economic injury (*supra* §V.B.2-3).  The Ninth Circuit has held that any plaintiff that has UCL standing will "***a fortiori***, have suffered 'any damage' for purposes of establishing CLRA standing." *Hinojos*, 718 F.3d at 1108.

18

**2.  Plaintiffs and Twitter Entered into a "Transaction"**

Defendants contend that Plaintiffs fail to allege a "transaction" (MTD at 22), defined by the CLRA as "an agreement . . . whether or not the agreement is a contract enforceable by action, and includes the making of, and the performance pursuant to, that agreement."  Cal. Civ. Code §1761(e).  Each of the Plaintiffs entered into the User Agreement with Defendants in order to use its services.  This comes squarely within the definition of a "transaction" under CLRA.  CAC, ¶33.

**3.  Twitter Provides "Services"**

Defendants claim that "online platforms like Twitter are not 'services' under the CLRA." MTD at 23.  The same argument was rejected in *Yahoo!*, in which the court held that Yahoo! provided "services," explaining that plaintiffs had accounts on Yahoo!'s web-based platform, used it to engage in various activities, that Yahoo! maintains and updates the platform thereby providing "'work, labor, and services,'" and that "Yahoo! itself has Terms of ***Service" in which the functions provided on the Yahoo! platform are referred to as services***.  313 F. Supp. 3d at 1142.  Here, too, Twitter provides access to its platform pursuant to its Terms of ***Service*** (which themselves refer to as "services") and the platform provides services to users that include sharing and accessing information and messaging.  CAC, ¶¶29-30, 33, 38.  Twitter also provides the "service" of maintaining this platform.  CAC, ¶38.

**4.  The CLRA Claim Is Pled with Particularity**

The application of Rule 9(b) is limited to CLRA violations based on representations and omissions.  As such, the branch of Plaintiffs' CLRA claim based on Defendants' advertising of services as having certain privacy and security features with the intent not to actually provide these features is adequately pled without reference to Rule 9(b).  CAC, ¶189(c).  The remaining CLRA violations pled in the Complaint, for the same reasons stated above as to the UCL claim (*supra*, §V.E.1-4), are pled with adequate particularity.  CAC, ¶189(a),(b),(d).  *See Doe 1 v. AOL LLC*, 719 F. Supp. 2d 1102, 1112 (N.D. Cal. 2010) (CLRA allegations sufficient to satisfy notice purpose of Rule 9(b) where complaint specified representations made in privacy policy, that representations were false and why, and that defendant acted in contravention of the representations.).

### G.  Plaintiffs Are Entitled to Injunctive Relief on Their UCL and CLRA Claims

Twitter contends that Plaintiffs fail to allege misconduct that is "ongoing" or "likely to recur," as required for standing to seek injunctive relief.  MTD at 22.   This argument ignores Plaintiffs' extensive allegations concerning Defendants' persistent, ongoing failures to implement adequate data security measures and the ongoing risk of harm to Plaintiffs.  CAC, ¶¶58-59, 61-82. Courts consistently reject similar arguments that a data breach is merely a past wrong where, as here, a pattern of data security failures and attendant ongoing risk to consumer data privacy is alleged.  *See Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 698 (N.D. Cal. 2019) (rejecting Facebook's argument that plaintiff lacked standing for injunctive relief because it had "fixed the bug that caused the data breach," reasoning that allegations of "repetitive losses of users' privacy supplies a long-term need for supervision" and a sufficient "likelihood of future harm to warrant potential relief"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *31-*32 (N.D. Cal. Aug. 30, 2017) (standing for injunctive relief demonstrated by allegations that, among other things, plaintiffs "face a 'real and immediate threat' of further disclosure of their PII, which remains in the hands of [d]efendants").

### H.  Plaintiffs Sufficiently Plead Their Declaratory Judgment Act Claim

Plaintiffs have adequately pled a claim under the Declaratory Judgment Act based on the actual controversy between Plaintiffs and Defendants regarding "whether Twitter is currently maintaining data-security measures adequate to protect Plaintiffs [] from further data breaches that compromise their PII."  CAC, ¶196.  *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  Plaintiffs further allege a real, immediate, and substantial risk of continuing injury "as a result of the compromise of their PII" and that they "remain at imminent risk that further compromises of their PII will occur in the future" and that Plaintiffs may "lack an adequate remedy legal remedy, in the event of another data breach."  CAC, ¶¶197, 199.  In addition, for the reasons set forth above, contrary to Defendants' assertion (MTD at 23), Plaintiffs have also adequately stated predicate claims.  These allegations are sufficient at the pleading stage.  *See, e.g.*, *In re Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-2583-TWT, 2016 WL 2897520, at *4-*5 (N.D. Ga. May 18, 2016); *In re Arby's Rest. Grp. Inc. Litig.*, No. 1:17-cv-1035-AT, 2018

WL 2128441, at *14-*15 (N.D. Ga. Mar. 5, 2018); *First Choice Fed. Credit Union v. Wendy's Co.*, No. 16-506, 2017 WL 9487086, at *5 (W.D. Pa. Feb. 13, 2017).  Last, Defendants' contention that the declaratory judgment claim should be dismissed as "duplicative" (MTD at 23) lacks merit. The Declaratory Judgment Act "'specifically allows a plaintiff to seek declaratory relief regardless of other claims brought.'"  *Hart v. TWC Prod. and Tech. LLC*, 526 F. Supp. 3d 592, 604 (N.D. Cal. 2021).

## VI.    CONCLUSION

For the reasons set forth herein, Twitter's Motion to Dismiss should be denied in its entirety.[14]

Dated: July 20, 2023                                          Respectfully submitted,

**SCOTT+SCOTT ATTORNEYS AT LAW LLP**                              **ISRAEL DAVID LLC**

*s/ Joseph P. Guglielmo*                                          *s/ Israel David*

Joseph P. Guglielmo (*pro hac vice* admitted)              Israel David (*pro hac vice* admitted)
The Helmsley Building                                        Hayley Elizabeth Lowe (*pro hac forthcoming*)
230 Park Avenue, 17th Floor                                  Blake Hunter Yagman (*pro hac vice* admitted)
New York, NY 10169                                           Madeline Sheffield (*pro hac* forthcoming)
Telephone: (212) 223-6444                                    17 State Street, Suite 4010
jguglielmo@scott-scott.com                                   New York, NY 10004
                                                             Telephone: (212) 739-0622
**SCOTT+SCOTT ATTORNEYS AT LAW LLP**                         israel.david@davidllc.com
                                                             hayley.lowe@davidllc.com
Joseph A. Pettigrew (CA Bar No. 236933)                      blake.yagman@davidllc.com
600 W. Broadway, Suite 3300                                  madeline.sheffield@davidllc.com
San Diego, CA 92101
Telephone: (619) 233-4565
jpettigrew@scott-scott.com

---

[14]    If the Court grants, in whole or in part, Twitter's motion to dismiss, Plaintiffs and the Class should be granted leave to amend the Complaint to cure any pleading deficiencies.  "'Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality.'"  *Sorensen v. Lexar Media, Inc*., No. 5:08-cv-0095-EJD, 2012 WL 929849, at *1 (N.D. Cal. Mar. 19, 2012) (citing *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir.1987)).  "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty.*, 708 F.3d 1109, 1117 (9th Cir. 2013).

1

**LYNCH CARPENTER LLP**

2

Gary F. Lynch (*pro hac vice* pending)
Jamisen A. Etzel (*pro hac vice* forthcoming)

3

Nicholas A. Colella (*pro hac vice* pending)
1133 Penn Avenue, 5th Floor

4

Pittsburgh, PA 15222
Telephone: (412) 322-9243

5

gary@lcllp.com
jamisen@lcllp.com

6

nickc@lcllp.com

7

**WOOD LAW FIRM, LLC**

8

E. Kirk Wood (*pro hac vice* forthcoming)
P.O. Box 382434

9

Birmingham, AL 35238-2434
Telephone: (205) 908-4906

10

kirk@woodlawfirmllc.com

11

*Attorneys for Plaintiff Casey Weitzman*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**ZIMMERMAN REED LLP**

Jeff Westerman (CA Bar No. 94559)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Telephone: (877) 500-9780
jeff.westerman@zimmreed.com

*Attorneys for Plaintiffs Stephen Gerber
and Eric Cohen*

1

## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on July 20, 2023, I caused the foregoing to be electronically filed with

3  the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the

4  email addresses denoted on the Electronic Mail Notice List.

5

6                                    *s/ Joseph P. Guglielmo*

7                                    Joseph P. Guglielmo

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28