**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
Joseph P. Guglielmo (*pro hac vice* admitted)
Anjori Mitra (*pro hac vice* admitted)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
jguglielmo@scott-scott.com
amitra@scott-scott.com

**ISRAEL DAVID LLC**
Israel David (*pro hac vice* admitted)
60 Broad Street, Suite 2900
New York, NY 10004
Telephone: (212) 350-8851
israel.david@davidllc.com

*Interim Co-Lead Class Counsel*

**SAWYER & LABAR LLP**
Adrian Sawyer, State Bar No. 203712
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: (415) 262-3820
sawyer@sawyerlabar.com

**CAHILL GORDON & REINDEL LLP**
Joel Kurtzberg (admitted *pro hac vice*)
John MacGregor, State Bar No. 304330
Jason D. Rozbruch (admitted *pro hac vice*)
32 Old Slip, New York, NY 10005
Telephone: (212) 701-3120
jkurtzberg@cahill.com
jmacgregor@cahill.com
jrozbruch@cahill.com

*Counsel for Defendant X Corp., as successor-in-interest to Twitter, Inc.*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN GERBER, CASEY WEITZMAN, MEGERDICH KASSABIAN, and K.B. FORBES, Individually and on Behalf of Themselves and All Others Similarly Situated,<br><br>      Plaintiffs,<br><br>v.<br><br>X CORP., as Successor-in-Interest to Twitter, Inc.,<br><br>      Defendant. | Case No.: 4:23-cv-00186-KAW<br><br><br>**JOINT LETTER RE DISCOVERY**<br><br>**DISPUTE** |

**<u>Attestation of Counsel</u>**

In accordance with Paragraphs 13 and 14 of the Standing Order, Plaintiffs and Defendant hereby attest that they have met and conferred by video conference and have complied with Section 9 of the Northern District's Guidelines for Professional Conduct regarding discovery prior to filing this joint letter.


Date: April 14, 2025

*/s/  Joseph P. Guglielmo*

By: Joseph P. Guglielmo


*/s/  Israel David*

By: Israel David


*/s/  Joel Kurtzberg*

By: Joel Kurtzberg

## I.    Unresolved Dispute and Background

This putative class action arises out of an alleged data breach of Defendant's systems that Plaintiffs claim exposed at least 200 million Twitter users' data.  ECF 128 ¶ 2.  Twitter denies those allegations.  The parties dispute whether Defendant is improperly withholding – on the grounds of attorney-client privilege and attorney work product protection (collectively, "privilege") – twelve incident reports or forensic investigation reports (the "Disputed Reports").

On July 11, 2024, Defendant made a production to Plaintiffs of two documents (totaling eight pages) that, according to Defendant, constituted the entirety of Defendant's relevant and non-privileged incident or investigation reports.  Defendant withheld from this production thirteen documents comprising 159 pages (the "Initially Disputed Reports"), including the twelve Disputed Reports.  On July 22, 2024, Defendant furnished a categorical privilege log, asserting that all the Initially Disputed Reports were "[f]orensic investigation and incident reports prepared at the direction of privacy and data protection counsel . . . and reflecting legal advice from privacy and data protection counsel regarding investigation of the API bug for purposes of responding to regulator inquiries and in anticipation of potential litigation."  Ex. A.

On July 24, 2024, Plaintiffs sent Defendant a letter contending that the Initially Disputed Reports were not privileged, and that Defendant's categorical privilege log of July 22, 2024 was inadequate.  On August 7, 2024, Defendant responded, maintaining that all the Initially Disputed Reports were privileged and that Defendant's July 22, 2024 privilege log was proper.

Between August 2024 and March 2025, the parties exchanged various additional letters and communications (i) disputing and defending the claimed privileges over the Initially Disputed Reports and (ii) challenging and defending/supplementing Defendant's privilege log.  On February 21, 2025, Defendant provided Plaintiffs an updated privilege log.  The parties also conducted via video conference three meet-and-confer sessions, in which they, in addition to covering other issues, discussed and attempted to narrow their disputes regarding (i) the claimed privilege of the Initially Disputed Reports and/or the Disputed Reports and (ii) Defendant's privilege log.  These video conferences occurred on August 23, 2024, February 24, 2025 (this meet-and-confer session *exclusively* addressed the foregoing issues), and April 7, 2025.

The parties were partially successful in narrowing and resolving their disputes.  On September 11, 2024, Defendant produced to Plaintiffs a seven-page disclosure issued by Defendant to the Federal Trade Commission, which Defendant states it discovered after making its July 11, 2024 production and serving its initial privilege log.  Additionally, on February 21, 2025, Defendant furnished a revised privilege log, which, as requested by Plaintiffs, reflected Defendant's claimed basis for withholding the Initially Disputed Reports on a document-by-document basis.  Finally, on April 7, 2025, Defendant stated that it had conducted further diligence, withdrew its assertion of privilege as to one of the Initially Disputed Reports – a two-page disclosure to the European Data Protection Commission – and produced that disclosure to Plaintiffs, along with a further revised privilege log reflecting that change.  Ex. B.  The parties, however, have been unable to eliminate their dispute regarding whether the remaining twelve reports – the Disputed Reports, which comprise 157 pages – are privileged and/or protected by the attorney work-product doctrine and may be properly withheld.

## II.    Plaintiffs' Position

The party asserting a privilege bears the burden of establishing it.  *Transamerica Life Ins. Co. v. Richards*, No. CV 22-0284 HDV (PVCX), 2024 WL 4866693, at *9 (C.D. Cal. Apr. 29, 2024).  In a diversity action like this proceeding under the Class Action Fairness Act, state privilege law governs the scope and application of the attorney-client privilege, and federal common law governs the scope and application of the attorney work product protection.  *Id.* at *6.  In short, and as per the below, the Disputed Reports – which contain extensive factual information regarding various aspects of the data breach – are not privileged, and must be produced.

### A.    Defendant Has Not Established, and Cannot Establish, that the Disputed Reports Are Subject to the Attorney-Client Privilege

The attorney-client privilege protects confidential communications "between a client and his or her lawyer in the course of that relationship."  Cal. Evid. Code § 952.  It may, in limited cases, extend to communications with counsel's agents furthering the attorney-client relationship.  *See Cal. Earthquake Auth. v. Metro. W. Sec., LLC*, 285 F.R.D. 585, 595 (E.D. Cal. 2012).  However, it covers only communications themselves, not facts, *Zurich Am. Ins. Co. v. Superior Ct.*, 155 Cal. App. 4th 1485, 1504 (Cal. App. 2 Dist. 2007), and must be "narrowly construed."  *Sun v. Ikea US W., Inc*, No. 15-CV-01146-MEJ, 2015 WL 6734480, at *4 (N.D. Cal. Nov. 4, 2015).

Even a cursory examination of Defendant's privilege logs reveals that the Disputed Reports are not legal memoranda from counsel to Defendant, requests to counsel seeking legal advice, or information provided to counsel for purposes of obtaining advice.  *See* Exs. A-B.  Rather, with one three-page exception (Twitter000000011), the Disputed Reports are investigation or incident reports generated by nonlawyers at Defendant (mostly software and security personnel) and shared with many other nonlawyers at Defendant (again, mostly software and security specialists), as well as various attorneys.  *See id.*  Thus, as a starting point, it is apparent that the Disputed Reports have – in whole or at least in very large part – a non-legal, business purpose.

When investigation or incident reports, such as the Disputed Reports, are created in the "usual course of business for a purpose independent of possible legal consultation, no privilege is created even if . . . later sent to counsel."  *City of Hemet v. Superior Ct.*, 37 Cal. App. 4th 1411, 1418 (Cal. App. 4 Dist. 1995) (as modified).  Similarly, when incident or investigation reports are created for a dual purpose that encompasses both transmission to counsel for consultation and an independent non-legal purpose, the "dominant purpose" controls for purposes of the attorney-client privilege.  *Id.*  Further, reports are not privileged merely because they were sent to counsel.  *C.P. v. Costco Wholesale Corp.*, No. 5:22-CV-01858-JFW-SP, 2023 WL 4157450, at *4 (C.D. Cal. May 16, 2023) (sharing with attorney does not make factual report privileged); *Ward v. Equilon Enters., LLC*, No. C 09-4565 RS (JL), 2011 WL 13257271, at *6 (N.D. Cal. Feb. 24, 2011) (sub. history omitted) (report generated in order to comply with regulations governing incident investigations not privileged); *see In re Samsung Customer Data Sec. Breach Litig.*, 2024 WL 3861330, at *8, *13 (D.N.J. Aug. 19, 2024) (documents not privileged where purpose was to gain cybersecurity vendor's expertise and to learn facts about breach, not legal advice); *Wengui v. Clark Hill, PLC*, 338 F.R.D. 7, 14-15 (D.D.C. 2021) (no privilege where goal was to determine "how the attack happened and what information was exfiltrated."); *see also Leonard v. McMenamins Inc.*, 2023 WL 8447918, at *4 (W.D. Wash. Dec. 6, 2023) ("[F]actual information . . . not protected merely because an attorney was copied.").

Here, for at least two main reasons, it is clear the Disputed Reports were made predominantly, if not exclusively, for ordinary-course business-related purposes – including compliance with regulations mandating that businesses impacted by data breaches provide individualized notices to data breach victims – as opposed to being created to request or to transmit legal advice.

First, Defendant's own privilege logs identify only *one* purpose for all Disputed Reports – "responding to regulator inquiries," including providing breach notifications via email to millions of Twitter users. *See* Exs. A-B; *Ward*, 2011 WL 13257271, at *6 (report created to satisfy investigation requirements not privileged); *Samsung*, 2024 WL 3861330, at *8, *13 (report created to convey facts about breach not privileged); *Wengui*, 338 F.R.D. at 14-15 (same); *see, e.g.*, Cal. Civ. Code § 1798.82 (requiring individualized data breach notifications, which necessarily requires an investigation to identify individuals' data at issue); *see also, e.g.*, X, *Twitter Privacy Center: Update about an alleged incident impacting some accounts on Twitter* (Dec. 9, 2022) ("we notified the affected users promptly").[1]

Second, it defies logic that the results of Defendant's investigation-related and notification-related business objectives relating to a massive data breach impacting over 200 million users could possibly constitute just four summary documents (comprising seventeen pages): (i) the two regulatory disclosures referenced above (nine pages total); and (ii) two public relations memoranda produced on July 11, 2024 (eight pages total). The 157 pages of Disputed Reports that Defendant is withholding clearly constitute factual, and thus non-privileged, incident or forensic investigation reports. Indeed, because the Disputed Reports were Defendant's *only* investigation/incident reports relating to the data breach, the Disputed Reports were necessarily generated for critical business, non-legal functions, and are not privileged. *See Wengui*, 338 F.R.D. at 14-15 (investigative report not privileged where it was "the only one").

## B.   Defendant Has Not Established, and Cannot Establish, that the Disputed Reports Are Subject to Attorney Work Product Protection

"[M]aterial obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or preparation for trial may be immune from discovery." *Transamerica*, 2024 WL 4866693, at *9. But documents, such as the Disputed Reports, that would have been created in the ordinary course anyway are not protected. *See Sun*, 2015 WL 6734480, at *3 ("[I]ncident report is not protected by the attorney work-product doctrine."); *Lewis v. Wells Fargo & Co.*, 266 F.R.D. 433, 441 (N.D. Cal. 2010) ("generalized fear of litigation does not turn a compliance audit into attorney work product"); *see also In re Lakeview Loan Servicing Data Breach Litig.*, No. 22-20955-Civ-GAYLES/TORRES, 2025 WL 928716, at *10 (S.D. Fla. Mar. 27, 2025) (data breach investigation reports not work product because created for regulatory compliance); *Wengui*, 338 F.R.D. at 15 (forensic report not work product where broadly shared internally, suggesting business purpose); *In re Dominion Dental Servs. USA, Inc. Data Breach Litig.*, 429 F. Supp. 3d 190, 194–95 (E.D. Va. 2019) (cybersecurity report that lacked a litigation focus and was consistent with company's operational practices not protected work product).

Moreover, even if the Disputed Reports were work product (they are not), Plaintiffs would still be entitled to them. Plaintiffs have a "substantial need for the[m] to prepare [their] case and cannot,

---

[1] Available at: https://privacy.x.com/en/blog/2022/update-about-an-alleged-incident-impacting-some-accounts-on-twitter.

without undue hardship, obtain their substantial equivalent."  Fed. R. Civ. P. 26(b)(3).

### III.    Defendant's Position

Throughout the meet and confers leading up to this joint letter, Plaintiffs argued that "investigation or incident reports" can never be privileged as a matter of law because they are always created primarily for a business purpose.  When asked, for example, whether privilege and/or work product would apply if the Disputed Reports were created at the direction of lawyers, for the primary purpose of providing legal advice and in anticipation of litigation, Plaintiffs' counsel said that it would not.  That, however, is not the law, because whether any documents are privileged or work product is fact-dependent. *See, e.g.*, *In re Experian Data Breach Litig.*, 2017 WL 4325583, at *1 (C.D. Cal. May 18, 2017) (finding that report and documents related to the investigation of a data breach were protected by the attorney work product doctrine because, under the "totality of the circumstances," it could "fairly be said that [they were] created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation").  Twitter conducted a fact-dependent inquiry of all documents in its privilege log – as evidenced by the production of some documents (including Twitter000000012), even if they contained a footer stating that the document is "PRIVILEGED & CONFIDENTIAL" – and have withheld only those documents that satisfy the test for privilege and work product.

In the Ninth Circuit, "the primary-purpose test governs in assessing attorney-client privilege for dual-purpose communications." *In re Grand Jury*, 23 F.4th 1088, 1090 (9th Cir. 2021).  This test recognizes that "some communications might have more than one purpose." *Id.* at 1091.  By contrast, for work product protection, the "because of" test applies, which "considers the totality of the circumstances and affords protection when it can fairly be said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation." *Id.* at 1092–93.  "It is a broader test than the 'primary purpose' test because it looks only at causal connection, and not a 'primary' reason." *Id.* at 1092.

The documents on the privilege log satisfy these tests.  As Twitter explained to Plaintiffs during the meet-and-confers, the documents on the log were created at the direction of in-house Legal Counsel and Senior Director of Legal at Twitter for the primary purpose of advising Twitter about anticipated litigations worldwide, Twitter's regulatory obligations, and to mitigate the risks of anticipated regulatory proceedings.  Twitter informed the Plaintiffs – and now informs the Court – that it is able and willing to provide an affidavit from the attorney in question to support its claims of privilege and work product, but Plaintiffs indicated that sworn testimony of that type would not change their position.

But it should, because the law is that *some* incident and investigation reports *are* privileged,  In re Experian Data Breach Litig., 2017 WL 4325583, at *1, and Twitter, through its proffer, has demonstrated that it can make the necessary showing as to these documents.

To confirm, Twitter's decisions to withhold documents on the bases of attorney-client privilege and the work product doctrine have been made carefully, following extensive investigation that included significant discussion with the parties involved in creating these documents.  The goal of these conversations was to ensure that Twitter had a complete understanding of why the documents were created, and whether they would exist if not for the prospect of anticipated litigation.  Indeed,

as a direct result of this careful investigative work, Twitter agreed to produce a document marked "PRIVILEGED & CONFIDENTIAL" on its face because, after further investigation about the document's origin, Twitter determined that it should not be withheld.

For the avoidance of doubt – and as discussed during Twitter's meet-and-confers with Plaintiffs – Twitter is not claiming that the facts underlying the company's investigation are privileged. Twitter agrees that Plaintiffs are entitled to discover such information through methods that would not force the company to reveal privileged or protected information. Thus, for example, if Plaintiffs were to ask questions about the causes of the API Bug at issue in this case at a deposition, Twitter would not instruct its witness not to answer on privilege grounds. For this reason, Plaintiffs cannot make a showing of "substantial need" to overcome work product protection, as there are ways for them to get the information they seek that do not infringe upon the attorney-client privilege and attorney work-product doctrine.

*[signature page follows]*

Joint Letter Re Discovery Dispute          CASE NO. 4:23-CV-00186-KAW

Dated: April 14, 2025

SCOTT+SCOTT ATTORNEYS AT
LAW LLP

 *s/ Joseph P. Guglielmo*
Joseph P. Guglielmo (pro hac vice admitted)
Anjori Mitra (pro hac vice admitted)
The Helmsley Building
230 Park Avenue, 24th Floor
New York, NY 10169
Telephone: (212) 223-6444
jguglielmo@scott-scott.com
amitra@scott-scott.com

SCOTT+SCOTT ATTORNEYS AT
LAW LLP
Joseph A. Pettigrew (CA Bar No. 236933)
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: (619) 233-4565
jpettigrew@scott-scott.com

LYNCH CARPENTER LLP
Gary F. Lynch (pro hac vice admitted)
Jamisen A. Etzel (pro hac vice forthcoming)
Nicholas A. Colella (pro hac vice admitted)
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
gary@lcllp.com
jamisen@lcllp.com
nickc@lcllp.com

WOOD LAW FIRM, LLC
E. Kirk Wood (pro hac vice forthcoming)
P.O. Box 382434
Birmingham, AL 35238-2434
Telephone: (205) 908-4906
kirk@woodlawfirmllc.com

*Attorneys for Plaintiffs*

ISRAEL DAVID LLC

 *s/ Israel David*
Israel David (pro hac vice admitted)
Madeline Sheffield (pro hac vice
forthcoming)
60 Broad Street, Suite 2900
New York, NY 10004
Telephone: (212) 350-8851
israel.david@davidllc.com
madeline.sheffield@davidllc.com

ISRAEL DAVID LLC
Mark A. Cianci (pro hac vice admitted)
399 Boylston Street, Floor 6, Suite 23
Boston, MA 02116
Telephone: (617) 295-7771
mark.cianci@davidllc.com

ZIMMERMAN REED LLP
Jeff Westerman (CA Bar No. 94559)
6420 Wilshire Blvd., Suite 1080
Los Angeles, CA 90048
Telephone: (877) 500-9780
jeff.westerman@zimmreed.com

6

**CAHILL GORDON & REINDEL LLP**

*s/ Joel Kurtzberg*
Joel Kurtzberg (admitted pro hac vice)
John MacGregor, State Bar No. 304330
Jason D. Rozbruch (admitted pro hac vice)
32 Old Slip
New York, NY 10005
Telephone: (212) 701-3120
jkurtzberg@cahill.com
jmacgregor@cahill.com
jrozbruch@cahill.com

**SAWYER & LABAR LLP**
Adrian Sawyer, State Bar No. 203712
1700 Montgomery Street, Suite 108
San Francisco, California 94111
Telephone: (415) 262-3820
sawyer@sawyerlabar.com

*Attorneys for Defendant*