UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

STEPHEN GERBER, et al.,

Plaintiffs,

v.

TWITTER, INC., et al.,

Defendants.

Case No. 23-cv-00186-KAW

**ORDER RE 4/14/2025 DISCOVERY LETTER**

Re: Dkt. No. 133

[Discovery Letter No. 1]

On April 14, 2025,[1] the parties filed a joint discovery letter regarding whether Defendant had adequately established attorney-client and/or work product privilege as to twelve incident and forensic investigation reports (the "Incident Reports"). (Discovery Letter at 1, Dkt. No. 133.)

### A.    Attorney-Client Privilege

Because this case was brought under CAFA, the Court has original diversity jurisdiction over the case. *Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1020-21 (9th Cir. 2007). Thus, state law governs the attorney-client privilege claim. *Schaeffer v. Gregory Vill. Partners, L.P.*, 78 F. Supp. 3d 1198, 1202 (N.D. Cal. 2015).

In general, "[t]he attorney-client privilege applies only to confidential communications," and must "be narrowly construed." *Behunin v. Superior Court*, 9 Cal. App. 5th 833, 843 (2017) (internal quotations omitted). "The party claiming the privilege has the burden of establishing the preliminary facts necessary to support its exercise, *i.e.*, a communication made in the course of an attorney-client relationship." *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 733

---

[1] On June 26, 2025, the parties requested that the case be stayed to allow the parties to attend mediation. (Dkt. No. 169.) Following the parties' September 15, 2025 status report, the stay was lifted on September 19, 2025. (Dkt. Nos. 173, 175.)

United States District Court
Northern District of California

(2009).  Once that party establishes "a prima facie claim of privilege, the communication is presumed to have been made in confidence and the opponent of the clam of privilege has the burden of proof to establish the communication was not confidential or that the privilege does not for other reasons apply."  *Id.*

"Privilege requires that the 'dominant purpose' of the communication be in furtherance of the attorney-client relationship; if the communications could have been transacted by a non-attorney, then the attorney-client privilege does not apply."  *Syncora Guarantee Inc. v. EMC Mortg. Corp.* 2013 U.S. Dist. LEXIS 82102, No. MC 13-80037 SI, 2013 U.S. Dist. LEXIS 82102, at *7-8 (N.D. Cal. June 10, 2013) (quoting *Montebllo Rose Co. v. Agric. Labor Relations Bd.*, 119 Cal. App. 3d 1, 32 (1954)).  Thus, "if a client prepares a report or other report relating to an incident or situation and intends that the document be transmitted to counsel, it is privileged; however, if a report is prepared in the usual course of business for a purpose independent of possible legal consultation, no privilege is created even if the document is later sent to counsel."  *City of Hemet v. Superior Court*, 37 Cal. App. 4th 1411, 1418 (1995).

In *Ward v. Equilon Enterprises*, the plaintiff suffered injuries when he fell while on the job.  No. C 09-4565 RS (JL), 2011 U.S. Dist. LEXIS 170825, at *3 (N.D. Cal. Feb. 24, 2011).  The defendant's in-house counsel hired an outside law firm to conduct a Root Cause Analysis investigation and report (the "RCA Report").  *Id.*  The district court found that the RCA Report did not qualify as attorney-client communication under California law even though the defendants claimed that the purpose of the RCA Report was to allow their attorneys to provide legal advice.  *Id.* at *11-12.  Rather, the district court explained that the investigation was conducted pursuant to Cal-OSHA regulations and company policies, which required incident investigations even if no litigation was anticipated.  *Id.* at *11, 17.  Thus, the "dominant purpose" of the RCA Report was to comply with Cal-OSHA regulations and company policies, not to obtain legal advice.  *Id.* at *17.

Here, Defendant likewise fails to satisfy its burden to establish that the dominant purpose of the Incident Reports was to obtain legal advice.  Rather, Defendant simply states that the purpose was threefold: to "advis[e] Twitter about anticipated litigations worldwide, Twitter's regulatory obligations, and to mitigate the risks of anticipated regulatory proceedings."

United States District Court
Northern District of California

(Discovery Letter at 4.)  Defendant fails to explain that the *dominant* purpose of the Incident Reports was to obtain legal advice about these alleged anticipated litigations and fails to provide specific facts to support its assertion that it anticipated litigation when the reports were created. Rather, as Plaintiff points out (and Defendant does not dispute), the regulations at issue appear to be compliance with mandates that business impacted by data breaches provide individualized notices to data breach victims.  (*Id.* at 3.)  Thus, it appears such documents would have been created even if no litigation was anticipated to satisfy ordinary business requirements.

This finding is underscored by the fact that almost all the Incident Reports were created solely by or in collaboration with security engineers, and were distributed not only to counsel, but to numerous personnel involved in security engineering, administrative business, marketing, human resources, and communications.  (Discovery Letter, Exh. B.)  This wide range of personnel strongly suggests that the documents were not created for the primary purpose of gathering legal advice in preparation for anticipated litigation but were used in overall business operations.

Accordingly, the Court finds that the Incident Reports are not protected by attorney-client privilege.

### B.    Work Product

"Unlike the attorney-client privilege, the application of the work product doctrine in diversity of citizenship cases is determined under federal law."  *Kandel v. Brother Int'l Corp.*, 683 F. Supp. 2d 1076, 1083 (C.D. Cal. 2009).  The work product doctrine protects "material obtained and prepared by an attorney or the attorney's agent in anticipation of litigation or in preparation for trial[.]" *Arfa v. Zionist Org. of Am.*, No. CV 13-2942 ABC (SS), 2014 U.S. Dist. LEXIS 26970, at *6-7 (C.D. Cal. Mar. 3, 2014).

In determining whether work product applies, the Court "must look to the totality of the circumstances surrounding the creation of the document when determining whether the document is entitled to work product protection," including whether "[a]t the time the attorney or the attorney's agent prepared the document, he or she . . . had a subjective belief that litigation was a real possibility and that belief must have been objectively reasonable." *Arfa*, 2014 U.S. Dist. LEXIS 26970, at *10.  Further, as above, work product privilege only applies if "the document

was created because of anticipated litigation and would not have been created in substantially similar form but for the prospect of litigation." *Id.* at \*11.

Here, Defendant relies on the same conclusory assertion that the Incident Reports were prepared in anticipation of litigations worldwide, as well as to comply with its regulatory obligations and mitigate the risks of anticipated regulatory proceedings, without further factual support. (Discovery Letter at 4.) Indeed, Defendant does not even point to the *instant* litigation as an example of anticipated litigation, despite several of the documents having been made after Defendant had appeared in the instant case. Defendant also fails to dispute Plaintiffs' assertion that the Incident Reports appear to have been created for business purposes, such that work product would not apply. (Discovery Letter at 3; *see Umpqua Bank v. First Am. Title Ins. Co.*, No. CIV S-09-3208 WBS EFB, 2011 U.S. Dist. LEXIS 34088, at \*14 (E.D. Cal. Mar. 17, 2011) ("Documents prepared in the ordinary course of business or that would have been created in essentially similar form irrespective of the litigation are not protectable as work product.").) Thus, the Court finds that the work product doctrine does not apply.

Accordingly, the Court ORDERS Defendant to produce the Incident Reports within **ten days** of the date of this order.

This order disposes of Dkt. No. 133.

IT IS SO ORDERED.

Dated: October 16, 2025

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

4