UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEPHEN GERBER, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>TWITTER, INC., et al.,<br><br>            Defendants. | Case No. 23-cv-00186-KAW<br><br>**ORDER GRANTING MOTION FOR RECONSIDERATION**<br><br>Re: Dkt. No. 201 |

Pending before the Court is Defendant Twitter, Inc.'s motion for reconsideration. (Def.'s Mot. for Reconsideration, Dkt. No. 201.) The Court previously deemed this matter suitable for disposition without a hearing pursuant to Civil Local Rule 7-1(b). (Dkt. No. 213.) Having considered the parties' filings and the relevant legal authorities, the Court GRANTS Defendant's motion for reconsideration.

## I.    BACKGROUND

On April 14, 2025, the parties filed a joint discovery letter regarding whether Defendant had adequately established attorney-client and/or work product privilege as to twelve incident and forensic investigation reports (the "Incident Reports"). (Dkt. No. 133.) The Court found that Defendant had failed to establish either privilege. (Discovery Order, Dkt. No. 178.) Specifically, the Court explained that Defendant had articulated three purposes for the Incident Reports: to "advise Twitter about anticipated litigations worldwide, Twitter's regulatory obligations, and to mitigate the risks of anticipated regulatory proceedings." (*Id.* at 2.) In finding that California attorney-client privilege and federal work product privilege did not apply, the Court found that the regulatory obligations were related to business requirements, as they appeared to concern compliance with mandates that businesses impacted by data breaches provide notice to data breach

United States District Court
Northern District of California

victims. (*Id.* at 3.) Thus, the Court found that Incident Reports would have been created for those business requirements even if no litigation was anticipated. (*Id.*)

On October 30, 2025, Defendant filed a motion for leave to file a motion for reconsideration. (Dkt. No. 185.) On November 13, 2025, Plaintiffs filed an opposition. (Dkt. No. 191.) On December 1, 2025, the Court permitted Defendant to file a motion for reconsideration but limited the scope to whether advice about regulatory obligations constituted legal advice (as opposed to business requirements). (Dkt. No. 196 at 1-2.)

On December 15, 2025, Defendant filed its motion for reconsideration. On January 8, 2026, Plaintiffs filed their opposition. (Pls.' Opp'n, Dkt. No. 205.) On January 15, 2026, Defendant filed its reply. (Def.'s Reply, Dkt. No. 206.)

## II.    DISCUSSION

Under California law, "[t]he attorney-client privilege attaches to a confidential communication between the attorney and the client and bars discovery of the communication irrespective of whether it includes unprivileged material." *Costco Wholesale Corp. v. Superior Court*, 47 Cal. 4th 725, 734 (2009). "For the communication to be privileged where a corporate entity is the client, 'the dominant purpose must be for transmittal to an attorney in the course of professional employment.'" *Wellpoint Health Networks v. Superior Court*, 59 Cal. App. 4th 110, 120 (1997) (quoting *Holm v. Superior Court*, 42 Cal. 2d 500, 507 (1954)). If, for example, "the corporation's dominant purpose in requiring the employee to make a statement is the confidential transmittal to the corporation's attorney of information emanating from the corporation, the communication is privileged." *Costco*, 47 Cal. 4th at 735. If, however, "the client's dominant purpose in retaining the attorney was something other than to provide the client with a legal opinion or legal advice," then the attorney-client privilege would not attach. *Id.*

Again, Defendant asserted that the purpose of the Incident Reports was threefold: to "advise Twitter about anticipated litigations worldwide, Twitter's regulatory obligations, and to mitigate the risk of anticipated regulatory proceedings." (Discovery Order at 2.) Thus, the question at issue is whether advising about such regulatory obligations constitutes legal advice or business requirements.

United States District Court
Northern District of California

The Court is persuaded by *Southern California Edison Co. v. Superior Court*, 102 Cal. App. 5th 573 (2024) that under California law, advice about regulatory obligations constitutes legal advice. There, Southern California Edison ("SCE") conducted an investigation "to comply with state law requiring it to publicly report any involvement it had in causing the fire." *Id.* at 578. The trial court found that because "the dominant purpose of the investigation was to ensure compliance with SCE's legal requirements," SCE's counsel had been "involved for a nonlegal business purpose," such that attorney-client privilege did not apply. *Id.* at 588.

The California Court of Appeal overturned, finding that "[c]ounsel's involvement here to ensure corporate compliance with legal reporting requirements *was* a legal role, not a nonlegal one[.]" *SCE*, 102 Cal. App. 5th at 588. Flatly disagreeing with the trial court's suggestion "that when attorneys advise on legal reporting obligations, they do so for a nonlegal business purpose," the California Court of Appeal explained:

> [C]ompanies are faced with myriad statutory and regulatory reporting and disclosure obligations under both federal and state law. To comply with those obligations and avoid unnecessary liability they often seek advice from attorneys. That advice can include not only how and what to report, but also whether one has a reporting or disclosure obligation in the first place. Sound legal advice requires knowing the applicable facts (good and bad) to determine whether one has a reporting obligation, and, if so, how best to comply with it.

*Id.* at 589. The California Court of Appeal further examined the stated purpose of the investigation -- to assess the potential legal risk caused by the fire, assess potential regulatory action related to the fire, assess potential legal strategies for mitigating risk, evaluate potential company liability in litigation or regulatory action, and consider potential measures to minimize or avoid future litigation or adverse regulatory actions from similar incidents -- and found that all of these "categories are appropriate topics for legal advice." *Id.*

Such is the case here. Advice about Defendant's regulatory obligations and to mitigate the risk of anticipated regulatory proceedings fall squarely in the categories found by *SCE* to constitute legal advice rather than nonlegal business purposes. Thus, all three stated purposes for the Incident Reports constitute protected legal advice, rather than business purposes.

In arguing that *SCE* does not apply, Plaintiffs correctly point out that *SCE* concerned work

3

United States District Court
Northern District of California

product privilege, rather than attorney-client privilege. (Pl.'s Opp'n at 1, 4 n.1.) The Court, however, finds this distinction to be inconsequential. The main point of *SCE* was to address "the governing question [of] what was the dominant purpose for counsel's retention: legal advice, or a nonlegal reason?" 102 Cal. App. 5th at 588 (citing *Costco*, 47 Cal. 4th at 735-736)). There is nothing in *SCE*'s discussion of whether compliance with legal reporting requirements was dependent on the specific contours of work product privilege. Indeed, in applying the dominant purpose test, the California Court of Appeal noted that this "test was developed in the context of the attorney-client privilege," and that the California Supreme Court had not decided whether it applied to work product privilege. *Id.*

In the alternative, Plaintiffs argue that *SCE* is distinguishable because there, the investigatory report was publicly produced while the discovery dispute concerned e-mails created during the investigation. (Pl.'s Opp'n at 7.) Plaintiffs contend that the Incident Reports here are akin to the investigatory report and thus must be produced. (*Id.*) The Court is not persuaded. In *SCE*, the investigatory report was submitted by the SCE to the Public Utilities Commission and was legally mandated to be public. (102 Cal. App. 5th at 580.) Here, there is no suggestion that the Incident Reports are the final product that would ultimately be submitted to the regulatory agencies pursuant to law. Rather, they appear to have been created as part of Defendant's investigation; thus, they are more akin to the e-mails created during the investigation.

Plaintiffs also cite cases in arguing that responding to regulators is a business purpose, but the Court finds these cases to be mostly distinguishable. (Pl.'s Opp'n at 4.) For example, in *Union Oil Co. of California v. Superior Court*, the California Court of Appeal found that the witness statements at issue "were made pursuant to the petroleum safety order and *incidentally* for the use of the petitioner's attorney." 151 Cal. App. 2d 290-91 (1957) (emphasis added). In *2,022 Ranch v. Superior Court*, the Court of Appeal found that attorney-client privilege would not apply to the factual investigation of an insurance claims adjuster even if the claims adjusters "happen to be licensed attorneys" because the work of a claims adjuster "ordinarily could be done by an individual not licensed to practice law." 113 Cal. App. 4th 1377, 1397-98 (2003). There is no showing that the Incident Reports were written only "incidentally" for Defendant's attorney, or

United States District Court
Northern District of California

that Defendant's attorney was engaged in work that was ordinarily done by non-attorneys. Finally, Plaintiff points to *Ward v. Equilon Enterprises LLC*, which found that attorney-client privilege did not apply where the dominant purpose of the investigation was to comply with Cal-OSHA regulations and company policies, rather than obtain legal advice. No. 09-4565 RS (JL), 2011 U.S. Dist. LEXIS 170825, at *11, 17 (N.D. Cal. Feb. 24, 2011). While the Court relied on this case in its discovery order, this case is not binding and predates *SCE*, such that it is not apparent that *Ward* would have come to the same conclusion if presented with *SCE*.

The Court acknowledges Plaintiffs' point that Defendant failed to present *SCE* to this Court in the original discovery letter despite its availability at the time. (Pl.'s Opp'n at 3.) Indeed, Defendant did not make any specific arguments regarding whether regulatory obligations constitute legal advice or business requirements in the context of attorney-client privilege and failed to even acknowledge that California law applied to attorney-client privilege in this case. Thus, there is a serious question of whether Defendant was reasonably diligent in presenting the relevant law to the Court, and whether Defendant satisfies the standard for reconsideration. *See 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) ("Under Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law.").

Ultimately, however, the Court finds that reconsideration is warranted because of the importance of the attorney-client privilege, as well as the likely irreparable harm of requiring production of privileged information. *See Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1490 (9th Cir. 1989) ("If Admiral is required to produce a privileged statement, it will suffer immediate, irreparable harm."); *Agster v. Maricopa Cty.*, 422 F.3d 836, 838 (9th Cir. 2005) (finding that an order regarding privilege was appealable "because significant strategic decisions turn on its validity and review after final judgment may therefore come too late"). Thus, the Court concludes that under California law, attorney-client privilege applies to the Incident Reports because they were created for the dominant purposes of obtaining legal advice, including advising Twitter about anticipated litigation, complying with Defendant's regulatory obligations, and

mitigating the risk of anticipated regulatory proceedings.

Because California attorney-client privilege applies, the Court does not determine whether federal work product privilege applies.

### III.    CONCLUSION

For the reasons stated above, the Court GRANTS Defendant's motion for reconsideration.

IT IS SO ORDERED.

Dated: February 20, 2026

_____
KANDIS A. WESTMORE
United States Magistrate Judge

United States District Court
Northern District of California

6